SUE FAHAMI
Acting United States Attorney
Nevada Bar No. 5634
MEGAN RACHOW
Nevada Bar No. 8231
Assistant United States Attorney
400 South Virginia Street, Suite 900
Reno, Nevada 89501
(775) 784-5438
Megan.Rachow@usdoj.gov

*Representing for the United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>TYLER MONSON,<br><br>    Defendant. | Case No.: 3:25-cr-00006-MMD-CLB<br><br>**Government's Response to Defendant's Motion for District Judge Review of Magistrate Judge's Detention Order [ECF 23]**<br><br>To be Filed Under Seal |

Certification: This Response is timely. ECF No. 23.

**1. Introduction**

Tyler Monson ("Defendant") was charged by complaint with one count of Transportation of a Minor with the Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). ECF 1. He appeared for an initial appearance on January 10, 2025, and after hearing argument from the government and Defendant, Magistrate Judge Carla L. Baldwin ordered Defendant to be detained pending trial. Magistrate Judge Baldwin found that the Government had proven by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any

other person and the community. ECF 11. Defendant now moves for District Judge review of the Magistrate Judge's detention order. ECF 23. After reviewing the pretrial services report which recommended detention and hearing argument from both parties, the Magistrate Judge properly found Defendant to be a risk of danger by clear and convincing evidence, such that no condition or combination of conditions could reasonably assure the safety of the public.

Defendant poses a danger to the community. Subject to rebuttal by Defendant, it shall be presumed that no condition or combination of conditions will reasonably assure the…safety of the community." 18 U.S.C. 3142(e)(3)(E). Defendant cannot overcome the presumption. As explained below, the facts and circumstances of this case have proven he poses a risk of danger such that conditions cannot be fashioned to reasonably assure the safety of the public. Defendant's motion should be denied.

2. Factual Background

As set forth in the complaint, ECF 1, the 27-year-old Defendant began an online relationship with a 15-year-old child which culminated in Defendant driving from Winnemucca, Nevada to Littleton, Colorado and in his own words "kidnapping" the child. During the drive back to Nevada, Defendant sexually assaulted the child by digitally penetrating her vagina.

Defendant brought the victim to the Elko County Sheriff's Office on January 2, 2025, and told police that he had kidnapped her. Defendant waived his Miranda rights and confessed to meeting the victim online. He stated that she had at first said that she was 18, however, based on comments she made about her parents, he suspected that she was younger. Defendant was very clear in his statement that she told him that she was 15 and that he chose to continue the relationship. Knowing that she was 15, he drove over 800

2

miles to continue his relationship with her. During his interview, he acknowledged that he knew it was wrong, that the victim had asked him to take her back home and that she had cried. Even though defendant admitted to knowing what he did was wrong, that he was a pedophile, and that he sounded like a "groomer", he continually tried to minimize his actions and place the blame on the 15-year-old victim.

When the victim was forensically interviewed[1], she confirmed that she met the defendant online but stated she believed that he was a 16-year-old boy who lived in Golden, Colorado. She did not know the defendant was 27 or that he lived in Nevada until he had already driven to Littleton, Colorado. She stated she did not find out his true age or that he was taking her to Nevada until she was already in the defendant's truck and she realized they were not driving towards Golden. She stated that she started cry and asked the Defendant to take her home, which he refused. She also stated that he showed her a handgun that he had in his vehicle and he told her the gun was loaded with the safety off. Defendant stated in his interview that when he showed her the gun, she asked if he was going to kill her. He stated that he thought she was joking.

When the victim's parents discovered she was missing, they called law enforcement. The defendant became a suspect because he had sent the victim's sister money for her birthday. Law enforcement located a potential address for the defendant in Winnemucca and attempted to contact his sister. His sister did not answer the door or contact law enforcement to ask why they were contacting her. Instead, she contacted the defendant and asked why law enforcement would be at her residence.

---

[1] The Government will provide a copy of the CAFI to defense once the proposed protective order is signed. ECF 25.

The victim disclosed in her forensic interview that the Defendant told both his sister and his father that he had a 15-year-old in his car with him. According to the victim, the defendant's sister told him to take her back to Colorado so maybe he wouldn't go to jail. The victim stated that the defendant's father told him to turn himself in and to say that the victim had lied about her age. According to the victim, the defendant had her talk to his father and his father told her to tell the police that she lied about her age. She said that the defendant's father told her that she wouldn't get in trouble but that the defendant might go to jail for the rest of his life.

**Procedural Background**

On February 6, 2025, defendant was indicted on one count of Transportation of a Minor with the Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). ECF 11. Defendant faces a mandatory minimum sentence of 10 years in prison and a potential maximum sentence of life. 18 U.S.C. § 2423(a). Defendant pled not guilty and trial is currently set for July 1, 2025. ECF 27.

**3. Argument**

This is one of the "rare cases" that warrant pretrial detention. *U.S. v. Santos-Flores.* 794 F.3d 1088, 1090 (9th Cir. 2015). The nature and circumstances of the alleged crime including the fact that the defendant possessed a firearm during the crime compels pretrial detention. All the factors that the defendant cites to arguing that they favor release on conditions were in place for the defendant when he allegedly chose to commit this crime. Pretrial Services recommended that Defendant be detained citing that he is a risk of danger due to the nature and circumstances of the charge. *See* Pretrial Services Report (PSR). Magistrate Judge Carla L. Baldwin properly found that Defendant is a risk of danger to the community such that no conditions can be fashioned to reasonably alleviate that risk.

1    In reviewing a detention order, the district court "is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). "[T]he ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* The factual determination upon review may include "evidence . . . offered that was not presented to the magistrate." *See id.*

In making such a determination, the factors to be considered include the nature and circumstances of the offense charged (including whether the offense is a crime of violence or involves a minor victim),[2] the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger to the community. *See* 18 U.S.C. § 3142(g).

Defendant poses a risk of danger by clear and convincing evidence. First, the nature and circumstances of the offense demonstrate as such. This is a crime that began in the privacy of defendant's residence when he was residing with his father. Defendant was online when he met the victim. According to the victim, the defendant posed as a 16-year-old boy from a town near where the victim lived. She had no idea who the defendant really was or where he was from. When she agreed to meet with the defendant, she believed she was meeting with another teenager-not a 27-year-old man. The defendant also asked her to send nude photos and she complied, thinking she was sending them to another

---

[2] Citing *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), Defendant claims the nature and circumstances of the offense and the weight of the evidence are the "least important" factors. Def. Mot. at 5. *Motamedi* only stated "the weight of the evidence is the least important of the various factors."

5

teenager. The defendant also sent the victim naked pictures. The defendant also admitted that he knew the victim's age when he started the lengthy drive to Colorado.

According to the victim, after he was contacted by his sister and had talked to his dad, the defendant was threatening her and telling her that he would ruin her life, that he would tell the police she lied about her age, that her family was abusive and he was helping her because she needed to get away from her family. She stated that when she tried to take his phone to call her mom, he started yelling at her and told her that he would hurt her if she didn't give the phone back. According to the victim, he then hit her hand. The victim stated that the defendant started crying and apologizing and saying that he didn't mean what he had just done. She also said that he told her not to talk about what happened at the hotel or in the car. The victim said that the defendant told her that she should not tell the police that he sexually assaulted her by digitally penetrated her. His coercion was effective as the victim then stated she felt really bad about telling the forensic interviewer what happened. The defendant and his father both tried to make her feel guilty like what had happened was her fault by telling her, if she didn't lie, the defendant would go to jail for the rest of his life. According to the victim, the defendant also threw things away that he believed were evidence that would get him in more trouble. The victim stated that he threw away lube, a vibrator and some drugs. While the defendant did turn himself in, he only did so because he knew that he was already caught. And he only turned himself in to law enforcement after he and his father both attempted to coerce the victim to lie and after he had thrown away evidence.

The weight of the evidence is overwhelming. The defendant admitted after waiving his Miranda rights, that he knew the victim was 15, he admitted to kidnapping a minor and exchanging pornography with her, and he admitted to having intentions of sleeping with

the victim knowing that she was a minor.  He admitted to performing sexual activity on the victim.  He attempted to blame the victim and mitigate his own actions by claiming that he only took her away because she threatened to kill herself.

The nature and seriousness of the danger cannot be overstated.  Defendant is an adult who met a child online, drove across multiple states to meet her, drove her back to Nevada despite her telling him that she just wanted to go home, displayed a firearm to her, sexually assaulted her and tried to guilt her into lying for him.  Defendant poses a risk of danger that cannot reasonably be alleviated by conditions because no conditions could be fashioned to alleviate those risks.  Defendant asserts that he could live with his mother or his sister and that there are conditions that could be fashioned including not possessing a computer or any other internet-capable device unless approved by Pretrial Services and have computer monitoring software installed.  Again, the defendant committed the beginning stages of this crime while living at his dad's home.  His sister upon finding out what her brother had done, did not call the police to let them know she had contact with her brother and that the victim was with him.  Instead, she told him to take the victim back to Colorado or drop her off at a hospital so he wouldn't go to jail.  With the sister's residence being located in Winnemucca, Pretrial Services would have to rely at least in part on the defendant's sister being truthful with them.  She has already demonstrated that after learning her brother kidnapped a 15-year-old, she did not notify law enforcement and instead, advised him to drop the victim off somewhere so that he wouldn't get in trouble.

Defendant's mother knew that the defendant was driving to Denver to meet a woman that he had met online.  When she asked him how old the woman was, he told her that the woman was 18.  From this statement, it is clear that he will and has lied to his mother.

In addition, as stated above, according to the victim, the defendant's father told her to lie to the police and tell them that she lied about her age. As one would expect, the defendant's family loves him and doesn't want him to go to jail. Because of this, their loyalty is obviously to the defendant and not to the court.

The problem with asserting that his devices can be monitored is that it is very easy to get a second device that Pretrial knows nothing about. This has happened before and there is no way for Pretrial to monitor or know if the Defendant has purchased another device. These types of crimes always involve secrecy.

Defendant also told Pretrial Services when he interviewed that he did not have a history of mental health conditions. However, he was discharged from the Marine Corps because his medical condition interfered with his performance of duty, was not a ratable disability and he had no potential for future military service. He was diagnosed with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Marine Corps noted that his condition had resulted in both suicidal and homicidal ideations. *See* Attachment A. The Marine Corps in recommending his separation from service because since his diagnosis, he has been a burden to the Marine Corps by communicating threats to his chain of command, degrading unit morale, and becoming an opponent of the unit's good order and discipline. *See* Attachment B.

**4. Conclusion**

Defendant's history, the nature and circumstances of the charged offense, the weight of the evidence, and the nature and seriousness of the risk of danger demonstrate not only that he is a danger to the community but also that no conditions can be fashioned to alleviate those risks. Defendant should remain detained pending trial. Defendant's motion

/ / /

should be denied.  The government reserves the right to supplement its response at any hearing ordered on this matter.

DATED this 26th day of March, 2025.

                                           Respectfully submitted,

                                           SUE FAHAMI
                                           Acting United States Attorney

                                           */s/ Megan Rachow*
                                           MEGAN RACHOW
                                           Assistant United States Attorney